IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUBRIZOL SPECIALTY § | |
| PRODUCTS, INC., § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:15-2915 |
| § | |
| BAKER HUGHES, INC., *et al.*, § | |
|     Defendants. § | |

## MEMORANDUM AND ORDER ON CLAIM CONSTRUCTION

This patent case is before the Court for construction of the disputed claim terms in United States Patent Nos. 8,022,118 ("the '118 Patent"), 8,426,498 ("the '498 Patent"), 8,450,249 ("the '249 Patent"), and 8,450,250 ("the '250 Patent") (collectively, the "Patents-in-Suit"). Plaintiff Lubrizol Specialty Products, Inc. ("Lubrizol") and Defendants Baker Hughes, Inc., Baker Petrolite Corporation, and Baker Petrolite LLC ("collectively, "Baker Hughes") agree that any construction of the disputed claim terms will apply consistently to all Patents-in-Suit.[1]

The Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996) ("*Markman* hearing"), on November 21, 2016. At that time, Lubrizol withdrew its allegation that Baker Hughes infringed Claim 6 of the

---

[1] Baker Hughes argues that the claim terms are indefinite and cannot be construed. As discussed below, the Court declines to reach the indefiniteness issue at this time.

'250 Patent and, as a result, construction of the claim term "solubility parameter" is unnecessary. Also during the *Markman* hearing, Baker Hughes withdrew its proposal for the claim term "turbulent flow." After the *Markman* hearing, Baker Hughes [Doc. # 115] and Lubrizol [Doc. # 124] each filed a Post-Hearing Filing Regarding the Court's Proposed Construction of "Pipeline."

Based on the evidence before the Court, the arguments presented by counsel, and the governing legal authorities, the Court issues this Memorandum and Order construing the claim terms "pipeline" and "turbulent flow."

## I.     BACKGROUND

Lubrizol is the owner of the Patents-in-Suit, which claim methods for the introduction of drag reducing agents ("DRAs") into heavy, asphaltenic hydrocarbon streams to achieve drag reduction as the hydrocarbon stream flows through the pipeline. Lubrizol's ExtremePower products embody the patented methods. Lubrizol alleges that for many years it was the only company to offer DRAs that were effective for causing drag reduction in heavy, asphaltenic crude oils.

Lubrizol filed this patent infringement lawsuit on October 5, 2015, and filed its Amended Complaint [Doc. # 36] on December 4, 2015. The Court conducted a *Markman* hearing on November 21, 2016, during which the parties presented evidence and argument regarding the proper construction of disputed claim terms. The Court

found the parties' oral argument to be extremely helpful and now construes the claim terms "pipeline" and "turbulent flow."

## II.　INDEFINITENESS ISSUE

Baker Hughes argues that the Patents-in-Suit are invalid under 35 U.S.C. § 112 because the claim terms are indefinite.  A patent is "invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, __ U.S. __, 134 S. Ct. 2120, 2124 (2014); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1340 (Fed. Cir. 2015).   The ultimate conclusion that a claim is indefinite under § 112 is a legal conclusion.  *See Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) (citing *Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1364 (Fed. Cir. 2015)).  "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Id.* (citing *Intel Corp. v. VIA Techs., Inc*., 319 F.3d 1357, 1366 (Fed. Cir. 2003)).

Although usually decided on a motion for summary judgment, the indefiniteness issue can if appropriate be decided at the time of claim construction. *See, e.g., Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1346 (Fed. Cir. 2016); *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1316 (Fed. Cir.

2013). In this case, the Court declines to decide the indefiniteness issue at this stage of the proceedings. Based on the current record, it appears unlikely that Baker Hughes will be able to satisfy its burden to demonstrate by clear and convincing evidence that the Patents-in-Suit are indefinite. Nonetheless, the discovery period has not ended, and the Court prefers to address the indefiniteness issue if and when presented in a motion for summary judgment with full and complete briefing.

### III. GENERAL LEGAL STANDARDS FOR CLAIM CONSTRUCTION

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Aventis Pharm., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*)). The patent claims in issue must be construed as a matter of law to determine their scope and meaning. *See, e.g., Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir.) (*en banc*); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007).

"There is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis*, 715 F.3d at 1373 (citing *Phillips*, 415 F.3d at 1312-13; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Therefore, Courts must "look to the words of the claims themselves . . . to define the

scope of the patented invention." *Id.* (citations omitted); *see also Summit 6, LLC v. Samsung Elec. Co., Ltd.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015). The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313; *see also ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1374 (Fed. Cir. 2009). This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313; *ICU*, 558 F.3d at 1374.

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips,* 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. For other claim terms, however, the meaning of the claim language may be less apparent. To construe those terms, the Court considers "those sources available to the public that show what a person of skill in the art would have

understood disputed claim language to mean . . . [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

The claims "provide substantial guidance as to the meaning of particular claim terms." *Id.* The Court may consider the context in which the terms are used and the differences among the claims. *See id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Because the claims "are part of a fully integrated written instrument," the Court may also consider the specification and the patent's prosecution history. *Id.* at 1315, 1317.

## IV. CONSTRUCTION OF DISPUTED CLAIM TERMS

The Court has carefully reviewed the Patents-in-Suit, specifically the claims and specifications. The Court also has considered each counsel's arguments presented in the claim construction briefing and at the *Markman* hearing. The Court also has reviewed and applied the governing Federal Circuit authority. On this basis, the Court construes the claim terms "pipeline" and "turbulent flow" as used in the Patents-in-Suit.

A.     **"Pipeline"**

Lubrizol and Baker Hughes originally disputed the proper construction of the claim term "pipeline." The focus of the parties' dispute involved whether a "flow loop" could be a pipeline. During the *Markman* hearing, based on its consideration of the parties' evidence and argument, the Court noted that a small "flow loop" was not a pipeline for purposes of the Patents-in-Suit. The parties have now agreed in their post-hearing filings [Docs. # 115 and # 124] that the claim term "pipeline" as used in the Patents-in-Suit can be construed as "a pipe for conveying fluid from one point to another." Based on the evidence and argument presented at the *Markman* hearing, and the parties' agreement in their post-hearing filings, the Court construes the claim term "pipeline" to mean "a pipe for conveying fluid from one geographic point to another."

B.     **"Turbulent Flow"**

In addition to its argument regarding indefiniteness, Baker Hughes originally argued that the claim term "turbulent flow" should be construed to include a "Reynolds number" limitation. During the *Markman* hearing, however, Baker Hughes withdrew that argument and offered no alternative to the construction proposed by Lubrizol. The Court has considered the evidence and argument presented in the parties' briefing and at the *Markman* hearing, particularly the evidence from the

parties' experts. Lubrizol's expert, Dr. Joel William Barlow, stated in his Declaration that "'turbulent flow' simply refers to flow that includes at least some turbulence." *See* Barlow Declaration [Doc. # 81-10], ¶ 55. Similarly, Baker Hughes's expert, Dr. John C. Fetzer, testified in his deposition that "turbulent flow is just a flow that has turbulence." *See* Fetzer Deposition [Doc. # 81-23], p. 10. Based on its consideration of all evidence and arguments presented by the parties, the Court construes the term "turbulent flow" to mean "flow that has turbulence such that the flow of the fluid is erratic and nonlinear."

## V. CONCLUSION

The Court has considered the evidence in the record. The Court also has considered the parties' oral arguments and explanations during the *Markman* hearing, which the Court found very helpful and informative. Based on this consideration of the evidence and the parties' arguments, as well as the application of governing claim construction principles, the Court construes the terms "pipeline" and "turbulent flow" in the Patents-in-Suit as set forth herein.

It is **SO ORDERED**.

SIGNED at Houston, Texas, this **8th** day of **December, 2016**.

P:\ORDERS\11-2015\2915Markman.wpd   161208.0749

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE